Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| D.R.V.C. Recurrente V. DEPARTAMENTO DE EDUCACIÓN Recurrido | KLRA202400288 | *Revisión de Decisión Administrativa* procedente del Departamento de Educación, Foro Administrativo de Educación Especial Querella Núm.: QEE 2324 26 11 00768 Sobre: Educación Especial |
|---|---|---|

Panel integrado por su presidenta; la Juez Lebrón Nieves, la Juez Barresi Ramos y la Jueza Santiago Calderón

*Lebrón Nieves, Juez Ponente*

## SENTENCIA

En San Juan, Puerto Rico, a 25 de marzo de 2025.

El 3 de junio de 2024, compareció ante este Tribunal de Apelaciones, el menor DRVC (en adelante, el menor), por conducto de su madre con patria potestad, la señora Tamara Colón Navedo (en adelante, señora Colón Navedo o parte recurrente), por medio de *Recurso de Revisión*. Mediante este, nos solicita que revisemos la *Resolución Final* emitida y notificada el 5 de mayo de 2024, por el Foro Administrativo de Educación Especial del Departamento de Educación (en adelante, Foro Administrativo o foro recurrido). En virtud del aludido dictamen, el ente administrativo ordenó al Departamento de Educación de Puerto Rico (DEPR) a reembolsar a la parte recurrente lo pagado en concepto de matrícula y mensualidades al Colegio Clagill, según evidenciado mediante factura, para los años 2022-2023. Además, determinó que, la parte recurrente debía continuar realizando el pago al colegio y que el DEPR le reembolsara tal pago.

Por los fundamentos que adelante se esbozan, se revoca la *Resolución Final* recurrida y se le ordena al DEPR el pago directo de lo adeudado por concepto de servicios educativos, servicios relacionados y suplementarios al Colegio Clagill por los años escolares 2022-2023 y 2023-2024.

**I**

Los hechos que suscitaron la controversia de epígrafe se remontan a una *Querella* presentada el 3 de noviembre de 2023 ante el Departamento de Educación, por la señora Colón Navedo en representación del menor DRVC. Según se desprende de la *Querella*, el menor DRVC fue registrado y determinado elegible para recibir los servicios del Programa de Educación Especial del DEPR. Realizada la reunión del Comité de Programación y Ubicación (COMPU), se consideró de forma afirmativa la ubicación del menor DRVC en la institución educativa privada Clagill en el Municipio de Bayamón para el año escolar 2022-2023. La parte recurrente alegó que, el 1ro de septiembre de 2022 la Secretaria Asociada de Educación Especial aprobó la compra de servicios en Clagill mediante el método de reembolso para el año escolar 2022-2023. Expresó que, debido a que no había recibido la contraseña del Sistema de Información Financiera del Departamento de Educación (SIFDE), no había logrado completar el proceso de crear la cuenta en dicha plataforma y que, sus intentos de resolver tal situación habían sido infructuosos. Sostuvo que, esa situación ha impedido que pudiese someter los documentos necesarios que evidencian y son requeridos por el DEPR para que se procese el reembolso de lo pagado para el año escolar 2022-2023, para un total de $3,900.00. Añadió, además, que, de acuerdo a los costos establecidos en la propuesta de servicios para el año escolar 2022-2023, aprobada por el DEPR, a Clagill se le adeudaba la cantidad de $17,400.00.

Por otro lado, la parte recurrente en la *Querella* alegó que, el COMPU no se había reunido para revisar el Programa Educativo Individualizado (PEI), ni determinar la ubicación para el año escolar 2023-2024. Lo anterior, tuvo como efecto que, la Secretaria Auxiliar de Educación Especial le notificara el 2 de agosto de 2023, a la señora Colón Navedo la aprobación de la compra de servicios en Clagill mediante el método de reembolso. Arguyó que, para el año escolar 2023-2024, la señora Colón Navedo había pagado $1,775.00 entre matrícula y las mensualidades de los meses de agosto, septiembre y octubre de 2023. Además, que, la cantidad adeudada a Clagill, conforme a la propuesta de servicios del año escolar 2023-2024 era de $5,395.00 e incluía la matrícula y las mensualidades aludidas. Asimismo, surge de la *Querella* que, durante el año escolar 2022-2023, la señora Colón Navedo solicitó al DEPR el cambio de método o mecanismo de pago de reembolso a pago directo, pero que no recibió respuesta. Para el año escolar 2023-2024, reiteró tal solicitud al DEPR, para que se remitiera pago directo a Clagill. Indicó que, Clagill aceptó realizar el trámite de cumplir con los requerimientos del DEPR, para así recibir el pago directo. Argumentó que, el menor DRVC y su familia no contaban con los recursos económicos para asumir el pago de la ubicación adecuada en Clagill y que, la determinación del DEPR de aprobar la compra por reembolso tenía como efecto el privar al menor DRVC de su derecho a una educación pública, gratuita y apropiada. A tales efectos, le solicitó al foro recurrido que le ordenara al DEPR lo siguiente.

1) Asista a la señora Tamara Colón en el proceso de obtener la contraseña de su cuenta en SIFDE para completar el trámite de someter las evidencias de pago y el DEPR procese el reembolso de las cantidades que se mencionan a continuación.

2) Efectuar el reembolso a la señora Tamara Colón de $3,900.00 pagado por ella a Clagill por la matrícula

y las mensualidades de agosto 2022 a mayo 2023 correspondiente al año escolar 2022-2023.

3) Realizar el reembolso a la señora Tamara Colón de los $1,775.00 pagado por ella a Clagill por concepto de matrícula y las mensualidades de agosto, septiembre y octubre de 2023 de este año escolar 2023-2024.

4) Pagar directamente a Clagill, $17,400.00 que corresponde a la cantidad que se le adeuda por sus servicios prestados el año escolar 2022-2023 y $5,395 que es la cantidad que se les debe por matrícula y mensualidades de agosto, septiembre y octubre de este año escolar 2023-2024.

5) Hacer el pago directo para la compra de servicios ya aprobada para este año escolar en Clagill.

De igual manera, notificó al foro recurrido que deseaba acogerse al procedimiento de mediación antes del señalamiento de Vista Administrativa para que pudiera resolverse la querella en el término reglamentario.

En respuesta, el 13 de noviembre de 2023, el DEPR presentó la *Contestación a Querella*. Primeramente, argumentó que, se encontraba realizando gestiones dirigidas a mitigar o resolver la situación presentada por la parte recurrente. No obstante, que, respecto a la solicitud de reembolso, esta tenía que colocar al DEPR en posición de poder emitir dicho pago. Indicó que, le correspondía a la parte recurrente cumplir con los procesos de registro en los sistemas MIPE y SIFDE, y que no lo había hecho. Respecto a la reclamación de pago directo, alegó que, la parte recurrente debía colocar al foro recurrido en la posición de poder determinar si, a la luz del derecho vigente, procedía o no la solicitud.

Posteriormente, la agencia recurrida emitió una *Orden* donde señaló *Vista Administrativa* para el 26 de diciembre de 2023. Luego de una moción de transferencia de vista presentada por el DEPR, el foro recurrido emitió *Orden* donde recalendarizó la vista para el 10 de enero de 2024.

Así las cosas, el 1 de enero de 2024, el DEPR presentó la *Notificación de Prueba*. A través de la moción, informó que presentaría como prueba testifical al director de la Institución Clagill, a la maestra de educación especial y al facilitador docente. Como prueba documental se proponía presentar el Manual de Procedimiento de Educación Especial, el expediente del menor DRVC, los PEIs pertinentes a la controversia y Minutas.

Por otro lado, el 2 de febrero de 2024, la parte recurrente presentó la *Moción Anunciando Prueba para Vista Administrativa*. Por medio de esta, notificó que, presentaría como prueba documental la siguiente:

a) *Minuta* de la reunión del COMPU de 23 de mayo de 2022.

b) Programa Educativo Individualizado del año escolar 2022-2023.

c) Propuesta educativa año escolar 2022-2023 del Colegio Clagill Recinto de Bayamón.

d) Correos electrónicos:
- De 13 de mayo de 2022 de Johanna E. González Rivera.
- De 22 de mayo de 2022 de Tamara Colón Navedo.
- De 4 de agosto de 2022 de Perla M. López Javier.
- De 22 de agosto de Linette Gigante Ruiz.
- De 25 de agosto de 2022 de Tamara Colón Navedo.
- De 31 de agosto de 2022 de Tamara Colón Navedo con sus anejos: carta dirigida a Perla López Javier fechada el 26 de agosto de 2022 y certificación de pagos de Clagill de 30 de agosto de 2022.
- De 1ro de noviembre de 2022 de Silka Y. Heredia Pacheco con uno de sus anejos: aprobación de compra de servicios educativos en Clagill de 1ro de septiembre de 2022.
- De 1ro de noviembre de 2023 de Héctor René Vega Montes.
- De 23 de febrero de 2023 de Tamara Colón Navedo con sus anejos: carta dirigida a Dra. Jessica Díaz Vázquez de 23 de febrero de 2023; hoja de autorización para depósito directo de nóminas de Banco Popular y certificación de pago de Clagill de 25 de enero de 2023.
- De 4 de agosto de 2023 de mipe-alertas_noreply@de.pr.gov (Dra. Jessica Días Vázquez) con su anejo: carta de aprobación de compra de servicios educativos para el año

escolar 2023-2024 de la Dra. Jessica Díaz Vázquez.

e) Certificación de Participante de Beneficios del PAN del gobierno de Puerto Rico.

f) Certificación de pago del año escolar 2022-2023 de Clagill de 3 de noviembre de 2023.

g) Certificación de pago del año escolar 2023-2024 hasta octubre de Clagill de 3 de noviembre de 2023.

h) Evidencia de pago de los estados de cuenta de Banco Popular de Puerto Rico de matrículas y mensualidades.

Mientras que, como prueba testifical anunció el testimonio de la señora Colón Navedo y del señor Eric Álvarez, director del Colegio Clagill.

Presentadas sendas mociones, el foro recurrido emitió *Orden* mediante la cual recalendarizó la vista administrativa para el 12 de febrero de 2024. Posteriormente, volvió a recalendarizarse la vista para el 22 de febrero de 2024.

Así las cosas, el 22 de febrero de 2024, fue celebrada la vista administrativa, a la cual comparecieron las representaciones legales de las partes y la señora Colón Navedo. En la vista desfiló el testimonio de la señora Colón Navedo. El 18 de marzo de 2024, tuvo lugar la continuación de la *Vista Administrativa*, donde fue presentado el testimonio del señor Eric Álvarez, director del colegio Clagill.

Se admitieron en evidencia por estipulación de las partes, los siguientes documentos:

a. Exhibit 1 conjunto minuta de la reunión del COMPU de 23 de mayo de 2022.

b. Exhibit 2 conjunto Programa Educativo Individualizado del año escolar 2022-2023.

c. Exhibit 3 conjunto Carta de aprobación de compra de servicios en Clagill de 1 de septiembre de 2022 de la Dra. Jessica Díaz Vázquez.

d. Exhibit 4 conjunto Carta de aprobación de compra de servicios en Clagill de 2 de agosto de 2023 de la Dra. Jessica Díaz Vázquez.

Con fecha de 9 de abril de 2024, el DEPR presentó un *Memorando de Derecho*. En esencia, sostuvo que, durante el procedimiento administrativo fue atendido satisfactoriamente la solicitud de acceso de la señora Colón Navedo al sistema SIFDE y que esta, pudo presentar los recibos de pago y recibir los correspondientes reembolsos. Por lo anterior, expresó que, tales controversias habían sido resueltas. De igual forma, el DEPR alegó que, la *Querella* presentada por la parte recurrente fue por una cuantía mayor a la pagada por la señora Colón Navedo al Colegio Clagill y por servicios no autorizados por el DEPR. Indicó que, no tenía ningún tipo de contrato con el Colegio Clagill para el menor DRVC, y que, consecuentemente, no existía ninguna relación contractual entre Clagill y el DEPR. De igual manera, arguyó que, no le había realizado pagos directos al Colegio Clagill por el menor DRVC, ni existía acuerdo alguno con este para realizar los pagos de esa forma. Puntualizó que, la parte recurrente no había solicitado al DEPR una reunión del COMPU posterior a la celebrada el 23 de mayo de 2022. Además, que, el PEI vigente al momento del memorando era el PEI 2022-2023, el cual no había sido enmendado para incluir otros asuntos.

Por otro lado, el DEPR alegó que, la propuesta del Colegio Clagill para el año escolar 2022-2023 presentaba un aumento significativo en la mensualidad, para un total de $2,245.00 adicionales a lo que se pagaba. Puesto que, incluía gastos como terapias y servicios que el DEPR alegó que no estaban contemplados por el PEI. De igual manera, sostuvo que, la determinación de los servicios necesarios es propia del COMPU, a pesar de que la propuesta puede recomendar servicios, esta no puede determinar de forma unilateral cuales servicios son requeridos para el estudiante. Aseguró que, la propuesta del Colegio Clagill incluía elementos que

no eran parte del PEI 2022-2023 y a los cuales, el DEPR no había consentido, por motivo de que el PEI del menor DRVC no había sido enmendado. Ante ello, arguyó que, solo se encontraba obligado a ofrecer lo acordado en la revisión del PEI 2022-2023, el 22 de mayo de 2022. Asimismo, acotó que, la propuesta del Colegio Clagill para el año escolar 2022-2023 estaba condicionada a facturación y pago directo. Respecto a lo anterior, expresó que, la escuela no podía condicionar su propuesta a facturación y pago directo, dado a que ello únicamente procedía mediante excepción, cuando los padres lo solicitan y evidencian la necesidad económica para ello. En específico, citó el Art. 6.3 del Reglamento de Compras de Servicio en Escuelas Privadas del DEPR. También citó el Art. 7.4 del aludido reglamento, que dispone que, le corresponderá al facilitador Docente de Asistencia Técnica o el funcionario designado, realizar un análisis de consulta donde considere todos los documentos sometidos junto con la solicitud de pago directo. Dicho facilitador o funcionario tendrá que realizar un resumen de caso con su recomendación final a la Secretaria de Educación Especial para que esta autorice o no la compra de servicios, ya sea por pago directo o reembolso. Cónsono con esto, la agencia recurrida sostuvo que, el 1 de septiembre de 2022 había emitido una carta de compra de servicios donde se acordó el reembolso del pago a la institución. Además que, a la fecha de la autorización, los servicios contemplados por el PEI 2022-2023 eran menos que los incluidos en la propuesta. Añadió que, el 2 de agosto de 2022, la SAEE decidió renovar el acuerdo de reembolso y autorizó para el año escolar 2023-2024, el reembolso de pago de matrícula, libros, mensualidades en el área de servicios educativos conforme la propuesta sometida. Asimismo, sostuvo que, la certificación emitida por el Colegio Clagill a los padres del menor DRVC, varió los montos e incluyó cuantías que no habían sido autorizadas por vía de la carta de autorización de reembolso para el

año escolar 2022-2023 o consentidas en el PEI o en la Minuta del 23 de mayo de 2022. Reiteró que, no existía autorización de la SAEE para realizar pagos directos o reembolsos al Colegio Clagill.

Posteriormente, la parte recurrente presentó *Memorando de Derecho*. Entre otras cosas, la parte recurrente sostuvo que, durante los años escolares 2022-2023 y 2023-2024, el menor DRVC se encontraba ubicado en la institución privada Clagill, por medio de compra de servicios bajo el método de reembolso de acuerdo a la aprobación de compra de la SAEE para los mencionados años escolares. Indicó que, a pesar de que se había determinado el pago por reembolso, el Colegio Clagill decidió ofrecerle al menor DRVC los servicios ofrecidos en la propuesta y aceptados por el COMPU el 23 de mayo de 2022, en lo que la señora Colón Navedo tramitaba la solicitud a la SAEE del cambio a depósito directo. A estos efectos, el Colegio Clagill le permitió a la señora Colón Navedo los pagos parciales de la matrícula y mensualidades. Argumentó, además, que, el DEPR no desfiló prueba en contra de la solicitud de pago directo de la señora Colón Navedo, sino que, más bien se limitó a cuestionar la diferencia entre el costo de los servicios brindados durante el año escolar 2021-2022 y los costos según la propuesta educativa del Colegio Clagill para los años escolares 2022-2023 y 2023-2024. Asimismo, adujo que, en la reunión del COMPU del 23 de mayo de 2022, el PEI se había hecho siguiendo el informe académico preparado por la maestra del menor DRVC, que se había discutido la propuesta del Colegio Clagill y se determinó que los servicios establecidos en esta proveían la ubicación recomendada de salón regular con servicios suplementarios. Mencionó también, que, la parte recurrida no controvirtió las declaraciones de la señora Colón Navedo y del señor Álvarez, director del Colegio Clagill, cuando expresaron que, a partir del año escolar 2022-2023, el

menor DRVC comenzó a recibir servicios adicionales, conforme a la propuesta educativa del Colegio Clagill.

Por otro lado, la parte recurrente acotó que, luego de que le solicitaran unas certificaciones de pago, esta las remitió junto a una misiva que hacía mención de que, los pagos eran parciales debido a que, no contaba con recursos para pagar la totalidad de las mensualidades y la matrícula. Añadió, que, había solicitado la compra de los servicios para que el menor DRVC pudiera recibir los servicios que estaban en la propuesta. La señora Colón Navedo sostuvo, además, que a principios del segundo semestre del año escolar 2022-2023, había solicitado nuevamente al Colegio Clagill una certificación de lo pagado por esta. Lo anterior, con el propósito de volver a solicitar a la SAEE que cambiara el método de pago de reembolso a pago directo, ya que, lo evidenciado en la certificación de pago era lo que ella, conforme a sus recursos económicos podía pagar. Adujo la señora Colón Navedo que había remitido una misiva a la doctora Jessica Díaz Vázquez, Secretaria Asociada de Educación Especial del DEPR, donde solicitó ayuda para que le autorizara el cambio del método de pago de reembolso a pago directo. Pero que, tal solicitud fue obviada, y fue aprobada la compra de servicios mediante reembolso.

La parte recurrente, argumentó que, conforme a la IDEA, ningún menor debe ser discriminado porque sus padres no cuentan con recursos económicos. Bajo tal fundamento, aseguró que, la IDEA no impone de forma alguna prohibición respecto a que el pago se realice de forma directa a las instituciones privadas. Añadió que, demostrar incapacidad económica no es un prerrequisito para que se apruebe dicho pago, conforme a lo resuelto en *Cohen v. N.Y. City Dep't of Educ,* No. 1:21-CV-06260 MKV, 2023 WL 6258147 (Dist. Ct.

N. Y. Sept. 26, 2023)[1].  Mencionó que, a pesar de lo anterior, la señora Colón Navedo logró demostrar que carecía de capacidad económica para costear en su totalidad la matrícula y las mensualidades del menor DRVC en el Colegio Clagill. De acuerdo a esto, acotó que, el derecho de una educación pública, apropiada y gratuita del menor DRVC no debería verse afectado por su estado económico. Asimismo, puntualizó que, el mecanismo de pago directo satisfacía el requisito legal de no imponerle una carga financiera a la familia del menor DRVC para sufragar el costo de los servicios de la institución privada que es obligación del Estado. Asimismo, adujo que, la imposición de pago por reembolso para las familias indigentes violentaba el mandato de la IDEA de provisión gratuita de una educación pública y apropiada, y que ello era la razón por la cual no podía determinarse que era el único mecanismo alterno al de la contratación por escrito entre el DEPR y la escuela privada. De igual manera, razonó que, el hecho de que una familia no cuente con los recursos económicos para cubrir el costo de la escuela privada y deba esperar a que le reembolsen conlleva a que se vea imposibilitada de reivindicar el derecho de un estudiante a una educación pública, apropiada y gratuita.

Finalmente, el foro recurrido emitió la *Resolución Final,* cuya revisión nos atiene. Mediante esta, el DEPR resolvió que, debido a que no existía una relación contractual entre el Colegio Clagill y el DEPR, no podía ordenarse que este último le realizara un pago directamente al Colegio Clagill por concepto de servicios que no fueron consentidos por la agencia.  La agencia recurrida expresó que, el DEPR no le adeudaba cantidad alguna al Colegio Clagill, ya que este nunca le había facturado directamente al DEPR porque

---

[1] De acuerdo a las Reglas de Citación del Blue Book los casos no publicados disponibles en línea se citan usando la citación de la base de datos. En este caso se ha utilizado la citación conforme a Westlaw.

conocía cual era la autorización y forma de pago establecida, es decir el reembolso a la señora Colón Navedo. Asimismo, señaló que, si el colegio no estaba de acuerdo con el pago recibido por la señora Colón Navedo, este debería *tomar la decisión que estime pertinente si así lo deseaba.* Razonó, además, que, ni el Colegio Clagill ni la señora Colón Navedo habían realizado reclamación alguna al DEPR en cobro de dinero adeudado para los años escolares 2022-2023 y 2023-2024, y que esta solo había reclamado lo pagado mediante reembolso.

Finalmente, el ente recurrido determinó lo siguiente:

**POR LO QUE SIENDO AS[Í],** se **ORDENA AL DEPR** que en este momento deberá reembolsar a la madre del Querellante lo pagado en concepto de matrícula y mensualidades al Colegio, según evidenciado mediante factura, para los años 2022-2023 y conforme a la carta de autorización de la SAEE para el año 2023-2024, dentro del término de 30 días a partir de la notificación de la presente Resolución, si es que aún se adeuda alguna cantidad.

Por otro lado[,] este Foro entiende que la madre del Querellante no adeuda cantidad de dinero alguna al Colegio en concepto de matr[í]cula o mensualidades, ya que el pago establecido es el que surge de la carta de autorización y no el establecido en propuesta y la madre del menor ha pagado.

Siendo el PEI la ley entre las partes en este momento se continuará realizando el pago al colegio por la parte [sic] la madre del Querellante y se realizará el rembolso [sic] de dinero pagado, previa presentación de factura, una vez se realice una reunión de COMPU debidamente constituido y se evalúe nuevamente la compra de servicios y la forma de pago se podrán hacer los cambios que se entiendan necesarios.

Inconforme con tal determinación, la parte recurrente presentó el *Recurso de Revisión* cuya revisión nos ocupa y esgrimió los siguientes señalamientos de error:

**Primer error:** La jueza administrativa erró al determinar que el DEPR no autorizó los servicios que la escuela privada brindó a DRVC para los años escolares 2022-2023 y 2023-2024, porque la ubicación adecuada acordada por el COMPU incluida en el PEI, salón regular con servicios suplementarios y relacionados equivale a la ubicación de salón regular con servicios relacionados.

**Segundo error:** El foro determinó incorrectamente que el programa educativo individualizado para el año escolar 2022-2023 discutido en la reunión del 23 de mayo de 2022 fue firmado en controversia por localización y ubicación.

**Tercer error:** Determinar que la parte querellante no cuestionó la tabla con cuantías para mensualidades y matrícula diferentes a las establecidas en la propuesta de servicios de Clagill que está aprobada en la autorización de la compra de servicios para el año escolar 2023-2024, del 2 de agosto de 2023.

**Cuarto error:** El foro administrativo erró al interpretar erróneamente la certificación de pagos de Clagill del 30 de agosto de 2022 que la llevó a determinar que esta certificación no refleja ni establece "balance final o un cobro de una cantidad distinta con balance de pago pendiente", para los años escolares 2022-2023 y 2023-2024.

**Quinto error:** La jueza administrativa erró en su interpretación de la carta de aprobación de la compra de servicios para el año escolar 2023-2024 al concluir que el DEPR puede correctamente determinar el precio o costos distintos a los establecidos por la escuela privada en su propuesta de servicios educativos.

**Sexto error:** La jueza administrativa determinó erróneamente que la madre querellante no reclamó al DEPR el pago del dinero adeudado por los servicios prestados por Clagill durante los años escolares 2022-2023 y 2023-2024, que el único reclamo de la madre fue el reembolso de lo pagado por ella.

**Séptimo error:** Erró la jueza administrativa cuando determinó y concluyó que por no haber una relación contractual entre el colegio y el DEPR no podía ordenar al DEPR el pago directo al colegio por concepto que no fueron consentidos por la agencia.

**Octavo error:** Erró la jueza administrativa al concluir que la madre no le adeuda nada al colegio y por consiguiente el DEPR tampoco, porque "...el pago establecido es el que surge de la carta de autorización y no el establecido en propuesta...".

Mediante *Resolución* emitida el 5 de junio de 2024, este Tribunal le ordenó a la parte recurrente acreditar en o antes del lunes 10 de junio de 2024, haber notificado copia del recurso a las partes y a la agencia recurrida. Igualmente, se le concedió a la parte recurrida hasta el miércoles 3 de julio de 2024 para presentar su alegato en oposición. Por otro lado, se le ordenó al DEPR someter copia certificada del expediente QEE 2324 26 11 00768.

El 10 de junio de 2024, la parte recurrente compareció mediante *Moción en Cumplimiento de Orden de 5 de junio de 2024*. En esta, acreditó la notificación del recurso a las partes y a la agencia recurrida.

La parte recurrida compareció el 3 de julio de 2024, mediante *Moción en Cumplimiento de Orden y Solicitud de Término*, donde solicitó un término adicional para presentar su oposición.

El 15 de julio de 2024, mediante *Resolución* le concedimos el término final e improrrogable hasta el viernes 19 de julio de 2024. Posteriormente, la parte recurrida presentó *Urgente Solicitud de Breve Término*, por medio de la cual solicitó un término adicional de dos (2) días para presentar su escrito. El 22 de julio de 2024, emitimos *Resolución* donde le concedimos hasta el martes 23 de julio de 2024 a las 11:30 am para cumplir con lo ordenado. El 23 de julio de 2024, la parte recurrida presentó su *Alegato en Oposición*.

Así las cosas, mediante *Resolución* emitida el 24 de julio de 2024, en vista de que en el recurso ante nuestra consideración se cuestiona la apreciación que de la prueba hiciera el ente administrativo recurrido, le ordenamos a la parte recurrente que, en el término de treinta (30) días, sometiera ante este Foro la Transcripción de la Prueba Oral desfilada durante los días 22 de febrero [y 18 de marzo] de 2024, según establecido en la Regla 66 del Reglamento de este Tribunal y la Sección 1415 (h) de la Ley IDEA. Asimismo, le concedimos a la parte recurrida un término de veinte (20) días para presentar sus objeciones a la transcripción, contado desde que esta fuese presentada ante este Tribunal.

El 28 de agosto de 2024, la parte recurrente presentó la *Moción en Cumplimiento de Orden de Resolución de 30 de julio de 2024*. Junto a esta, acompaño la Transcripción de la Prueba Oral de las vistas celebradas los días 18 de febrero y 22 de marzo de 2024, según ordenado.

La parte recurrente presentó el *Alegato Suplementario* el 21 de octubre de 2024.

Posteriormente, el 20 de noviembre de 2024, la parte recurrida presentó el *Alegato Suplementario en Oposición.*

Con el beneficio de la comparecencia de las partes, procedemos a resolver.

**II**

**A.** ***Estándar de Revisión Judicial de Determinaciones Administrativas***

Según es sabido, los tribunales apelativos debemos otorgar amplia deferencia a las decisiones emitidas por las agencias administrativas, puesto que, estas cuentan con vasta experiencia y pericia para atender aquellos asuntos que se les han sido delegados por la Asamblea Legislativa. *OEG v. Martínez Giraud,* 210 DPR 79 (2022); *Hernández Feliciano v. Mun. Quebradillas,* 211 DPR 99 (2023); *Pérez López v. Depto. Corrección,* 208 DPR 656, 672 (2022); *Super Asphalt v. AFI y otros,* 206 DPR 803, 819 (2021).[2] Es por ello, que, tales determinaciones suponen una presunción de legalidad y corrección, que a los tribunales nos corresponde respetar, mientras la parte que las impugne no presente prueba suficiente para derrotarlas. *Íd.*; *OEG v. Martínez Giraud,* supra, pág. 89; *Hernández Feliciano v. Mun. Quebradillas,* supra, pág. 114; *Batista, Nobbe v. Jta. Directores,* 185 DPR 206, 216 (2012). No obstante, tal norma no es absoluta, es por lo que, nuestro Máximo Foro ha enfatizado que no podemos imprimirle un sello de corrección, so pretexto de deferencia a las determinaciones administrativas que sean irrazonables, ilegales o contrarias a derecho.

---

[2] Véase también: *Graciani Rodríguez v. Garaje Isla Verde,* 202 DPR 117, 126 (2019); *Rolón Martínez v. Supte. Policía,* 201 DPR 26,35 (2018); *Torres Rivera v. Policía de PR,* 196 DPR 606, 626 (2016); *Asoc. Fcias. v. Caribe Specialty et al. II,* 179 DPR 923, 940 (2010).

En *Torres Rivera v. Policía de PR*, supra, pág. 628, nuestro Tribunal Supremo resumió las normas básicas en torno al alcance de la revisión judicial de la forma siguiente:

> [L]os tribunales deben deferencia a las decisiones de una agencia administrativa, pero tal deferencia cederá cuando: (1) la determinación administrativa no está basada en evidencia sustancial; (2) el ente administrativo erró en la aplicación o interpretación de las leyes o reglamentos que se le ha encomendado administrar; (3) el organismo administrativo actuó arbitraria, irrazonable o ilegalmente, realizando determinaciones carentes de una base racional, o (4) la actuación administrativa lesionó derechos constitucionales fundamentales. Es importante destacar que **si el tribunal no se encuentra frente a alguna de esas situaciones, aunque exista más de una interpretación razonable de los hechos procede que se valide la interpretación que realizó la agencia administrativa recurrida**. (Énfasis suplido).[3]

El criterio rector bajo el cual los tribunales deben revisar las decisiones administrativas es el criterio de razonabilidad. *OEG v. Martínez Giraud*, supra, pág. 89; *Super Asphalt v. AFI y otros*, supra, pág. 820; *Graciani Rodríguez v. Garaje Isla Verde*, supra, pág. 127; *Torres Rivera v. Policía de PR*, supra, pág. 626. Bajo este criterio, se limita la revisión judicial a dirimir si la agencia actuó de forma arbitraria o ilegal, o de manera tan irrazonable que su actuación constituya un abuso de discreción. *Íd.*; *Pérez López v. Depto. Corrección*, supra, pág. 673; *OEG v. Martínez Giraud*, supra, pág. 90; *Super Asphalt v. AFI y otros*, supra, pág. 819-820; *Graciani Rodríguez v. Garaje Isla Verde*, supra, pág. 127; *Rolón Martínez v. Supte. Policía*, supra, pág. 36; *Batista, Nobbe v. Jta. Directores*, pág. 216.

Bajo este supuesto, la Sec. 4.5 de la Ley Núm. 38 del 30 de junio de 2017, 3 LPRA 9675, conocida como la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU), "estableció el marco de revisión judicial de las agencias administrativas". *Rolón Martínez v. Supte. Policía*, supra, pág. 35. La

---

[3] Véase *Super Asphalt v. AFI y otros*, supra, págs. 819-820.

intervención del tribunal se limita a tres áreas, a saber: (1) si el remedio concedido por la agencia fue apropiado; (2) si las determinaciones de hecho que realizó la agencia están sostenidas por evidencia sustancial que obra en el expediente administrativo visto en su totalidad, y (3) si las conclusiones de derecho del ente administrativo fueron correctas. *Íd.* págs. 35-36; *OEG v. Martínez Giraud,* supra, pág. 90*; Torres Rivera v. Policía de PR*, supra, págs. 626-627; *Hernández Feliciano v. Mun. Quebradillas*, supra, pág. 115; *Batista Nobbe v. Jta. Directores*, supra, pág. 217; Sec. 4.5 de la LPAU, 3 LPRA sec. 9675. Nuestro Máximo Foro, ha expresado que, esta intervención "debe ocurrir cuando la decisión administrativa no se fundamente en evidencia sustancial o cuando la agencia se equivoque en la aplicación de la ley". *Rolón Martínez v. Supte. Policía*, supra, pág. 36. Siendo así, aquellas determinaciones de hechos formuladas por el ente administrativo deberán sostenerse cuando estén basadas en evidencia sustancial que surja del expediente administrativo considerado en su totalidad. *Íd; OEG v. Martínez Giraud,* supra, pág. 90; *Super Asphalt v. AFI y otros,* supra, pág. 819-820; *Hernández Feliciano v. Mun. Quebradillas*, supra, pág. 115. Por otro lado, las determinaciones de derecho pueden ser revisadas en su totalidad. *Rolón Martínez v. Supte. Policía,* supra, pág. 36; *Torres Rivera v. Policía de PR*, supra, pág. 627; Sec. 4.5 LPAU, 3 LPRA sec. 9675. No obstante, los tribunales deberán darles peso y deferencia a las interpretaciones que la agencia realice de aquellas leyes particulares que administra. *Rolón Martínez v. Supte. Policía*, supra, págs. 36-37; *Torres Rivera v. Policía de PR,* supra, pág. 627. El Tribunal Supremo ha dispuesto que, la deferencia que le deben los tribunales a la interpretación que haga el ente administrativo sobre aquellas leyes y reglamentos que le corresponde poner en vigor, cede si la agencia: "(1) erró al aplicar la ley; (2) actuó arbitraria, irrazonable o ilegalmente, o (3) lesionó derechos constitucionales

fundamentales. *Íd.* págs. 627-628; *OEG v. Martínez Giraud,* supra, pág. 90. Finalmente, nuestra más Alta Curia ha expresado que, conforme lo anterior, el criterio administrativo no podrá prevalecer en aquellas instancias donde la interpretación estatutaria realizada por una agencia provoque un resultado incompatible o contrario al propósito para el cual fue aprobada la legislación y la política pública que promueve. Así, "la deferencia judicial al *expertise* administrativo, concedido cuando las agencias interpretan la ley, tiene que ceder ante actuaciones que resulten irrazonables, ilegales o que conduzcan a la comisión de una injusticia". *Íd.*

## B. Sobre Educación Especial

Según es sabido, en Puerto Rico el derecho a la educación tiene rango constitucional. *Declet Ríos v. Departamento de Educación,* 177 DPR 765, 773 (2009); *Orraca López v. ELA,* 192 DPR 31, 40 (2014). Cónsono con lo anterior, el Artículo II, Sec. 5 de la Constitución del Estado Libre Asociado de Puerto Rico, LPRA, Tomo 1, ed. 1982, pág. 271, dispone en lo pertinente:

> Toda persona tiene derecho a una educación que propenda al pleno desarrollo de su personalidad y al fortalecimiento del respeto de los derechos del hombre y de las libertades fundamentales. Habrá un sistema de instrucción pública el cual será libre y enteramente no sectario. La enseñanza será gratuita en la escuela primaria y secundaria y, hasta donde las facilidades del Estado lo permitan, se hará obligatoria para la escuela primaria. *Asoc. Academias y Col. Cristianos v. ELA,* 135 DPR 150, 168 (1994).

El propósito principal de la cláusula es definir las aspiraciones colectivas sobre la educación y crear un sistema de enseñanza pública a niveles primario y secundario exclusivamente. El lenguaje utilizado en el citado artículo y el claro historial de esta disposición en la Convención Constituyente indican, sin lugar a dudas, que el derecho a la educación allí reconocido se limita a la educación a niveles primarios y está sujeto a que el Estado tenga los recursos necesarios para su implantación. *Asoc. Académias y Col. Cristianos*

*v. ELA,* supra, a las pág. 168-169; *Orraca López v. ELA,* supra, pág.
41.

En *AMPR v. Srio. Educación,* 178 DPR 253 (2010), nuestro
Tribunal Supremo expresó:

> El derecho a la educación es de tal importancia que los
> miembros de la Asamblea Constituyente incluyeron "el
> afán por la educación" como uno de los factores
> determinantes en nuestra vida como pueblo
> democrático.[4]

> Por tal razón, este Tribunal también ha reconocido la
> importancia que disfruta la educación en nuestra
> jurisdicción. Así pues, hemos resuelto que el Estado
> tiene un interés apremiante en que la educación, tanto
> pública como privada, sea una de excelencia.[5] Además,
> expresamente hemos apuntalado que "a través de la
> educación se imparte la preparación necesaria para que
> los ciudadanos participen en el desarrollo social y
> económico de nuestra vida colectiva".[6]

> En consecuencia, debido a las raíces constitucionales
> que nutren el derecho a la educación, nuestra Asamblea
> Legislativa ha creado y modificado en varias ocasiones
> las leyes que buscan hacer realidad dicho derecho.
> Como hemos mencionado, éste intenta proveer a
> nuestros niños y adolescentes la oportunidad de recibir
> una educación de excelencia y que propenda al pleno
> desarrollo de su personalidad, tal y como anhelaban los
> miembros de la Asamblea Constituyente.

> Así pues, estos principios constituyeron la piedra
> angular de la Ley Orgánica del Departamento de
> Educación Pública de Puerto Rico, Ley Núm. 149,
> *supra,* la cual se fundamenta sobre tres premisas
> básicas:

> (1)  El estudiante es la razón de ser del sistema
> educativo y el maestro su recurso principal.

> (2)  La interacción entre estudiantes y maestros
> constituye el quehacer principalísimo de la escuela. Las
> demás actividades escolares, independientemente de su
> índole, se justifican sólo cuando facilitan la docencia,
> mejoran la gestión educativa o fortalecen los servicios
> de la escuela a la comunidad.

> (3)  Las escuelas pertenecen a las comunidades que
> sirven y estas deben participar en su gobierno.[7]

---

[4] Véase, Preámbulo de la Constitución del Estado Libre Asociado de Puerto Rico,
LPRA, Tomo 1; Véase además, *Asoc. Maestros P.R. v. Srio. Educación,* 137 DPR
528, 569 (1994), (Naveira de Rodón, J., op. conformidad, escolio 19).
[5] *Asoc. Academias y Col. Cristianos v. ELA,* supra, pág. 164.
[6] Íd.; Véase, *De Paz Lisk v. Aponte Roque,* 124 DPR 472 (1984).
[7] Art. 1.02, secs. (a) y (b) de la Ley Núm. 149 de 15 de julio de 1999, según
enmendado.

Respecto a las personas con impedimentos, el Alto Foro expresó en *Bonilla v. Chardón,* 118 DPR 599, 605-606 (1978) que: [a]unque por muchos siglos las sociedades han marginado, discriminado y estigmatizado a las personas con impedimentos físicos, en las últimas dos décadas el estado moderno ha tomado medidas afirmativas para incorporarlas a la comunidad. Entre los cambios más notables se destaca el reconocimiento de su derecho a recibir y reclamar judicialmente educación remedial. (Citas omitidas).

Con este escenario como norte, para los años setenta la Asamblea Legislativa aprobó la Ley Núm. 21 de 22 de julio de 1977, conocida como Ley del Programa de Educación Especial, 18 LPRA sec. 1331, et. seq. Al aprobarse el estatuto, la Asamblea Legislativa utilizó como modelo la entonces vigente Ley Federal de Educación Especial, Ley Púb. Núm. 94-142[8], de 29 de noviembre de 1975 (89 Stat. 773), conocida en inglés como *Education for All Handicapped Children Act of 1975. Declet Ríos v. Departamento de Educación,* supra, a la pág. 774, citando a *Bonilla v. Chardón,* supra. Ambas leyes, la federal y la estatal, reconocían el derecho de los niños y niñas con impedimentos físicos a tener acceso al sistema de educación pública mediante un plan de enseñanza individualizado que atendiera sus necesidades. *Íd.*

Luego, en el 1990 el Congreso de los Estados Unidos aprobó la ley conocida como *Individuals with Disabilities Education Act* (IDEA). Con posterioridad, la referida legislación se enmendó en el 2004, por la ley federal conocida como *Individuals with Disabilities Education Improvement Act* (IDEA).

La Ley Federal de Educación Especial tiene entre sus propósitos asegurar que los niños y las niñas con impedimentos

---

[8] 20 USC sec. 1400 et seq.

reciban una educación pública, apropiada, gratuita y que atienda las necesidades especiales de cada estudiante; que los derechos de los menores con impedimentos y sus padres sean protegidos, y evaluar y asegurar la efectividad de los esfuerzos para educarlos. Ley Púb. Núm. 108-446, 20 USCA sec. 1400(d)(1), (2) y (4). Para ello, provee una serie de requisitos sustantivos y procesales. *Declet Ríos v. Departamento de Educación*, supra, a la pág. 777.

En virtud de lo establecido en estas leyes federales y en amparo al mandato constitucional, la Asamblea Legislativa derogó la Ley Núm. 21, *supra*, y aprobó la Ley Núm. 51 de 7 de junio de 1996, conocida como "Ley de Servicios Educativos Integrales para Personas con Impedimentos", 18 LPRA sec. 1351 et seq. Esta Ley ratifica el derecho de las personas con impedimentos a recibir una educación pública, gratuita y de acuerdo a sus necesidades, que le permita desarrollarse plenamente y convivir con dignidad en la comunidad de la que forman parte.  Con este propósito se establecen claramente las responsabilidades y funciones de todas las agencias que deben brindar servicios especializados y profesionales directos o relacionados a este sector de la población.[9] *Orraca López v. ELA*, supra, pág. 41.

Como parte de la declaración de política pública, dicho estatuto dispone, en su Artículo 3 sec. 1352, lo siguiente:

> El Gobierno de Puerto Rico se reafirma en su compromiso de promover el derecho constitucional de toda persona a una educación gratuita que propenda al "pleno desarrollo de su personalidad y al fortalecimiento del respeto de los derechos del hombre y de las libertades fundamentales". Para el logro de este propósito se trabajará conjuntamente con la familia, ya que el desarrollo integral de la persona con impedimentos debe estar enmarcado en su contexto familiar.

> Forma parte de esta política pública sobre las personas con impedimentos, hasta donde los recursos del Estado lo permitan, garantizar:

---

[9] Véase: Exposición de Motivos de la "Ley de Servicios Educativos Integrales para Personas con Impedimentos".

(1) Una educación pública, gratuita y apropiada, en el ambiente menos restrictivo posible, especialmente diseñada de acuerdo a las necesidades individuales de las personas con impedimentos y con todos los servicios relacionados indispensables para su desarrollo, según se establezca en su plan individualizado de servicios, y lo más cerca posible de las demás personas sin impedimentos. Esto aplica tanto a las escuelas públicas del Departamento de Educación como a las Escuelas de la Comunidad bajo la administración del Instituto de Reforma Educativa.

(2) Un proceso de identificación, localización, registro y una evaluación por un equipo multidisciplinario debidamente calificado de todas las personas con posibles impedimentos, dentro o fuera de la escuela, desde el nacimiento hasta los veintiún (21) años de edad inclusive.

(3) El diseño de un Programa Educativo Individualizado (PEI) que establezca las metas a largo y corto plazo, los servicios educativos y los servicios relacionados indispensables según lo determine el equipo multidisciplinario.

(4) La confidencialidad de toda información personal.

(5) Un sistema sencillo, rápido y justo de ventilación de querellas.

(6) La participación de los padres en la toma de decisiones en todo proceso relacionado con sus hijos.

[…]

En vista de lo anterior, la Ley Núm. 51, *supra*, y los reglamentos relacionados responden a la obligación del Estado de cumplir con la Ley Federal de Educación Especial, *supra*, y sus reglamentos.[10] [. . .]. El estatuto federal requiere, *inter alia*, que los estados que se benefician de fondos federales del Departamento de Educación de los Estados Unidos (U.S. Department of Education) establezcan programas de educación especial pública, gratuita, apropiada y que atiendan las necesidades especiales de cada

---

[10] "[Individuals with Disabilities Education Act (IDEA)] leaves to the States the primary responsibility for developing and executing educational programs for handicapped children, but imposes significant requirements to be followed in the discharge of that responsibility." (Énfasis suplido.) *Schaffer v. Weast,* 546 US 49, 52 (2005). Véase *Board of Ed. v. Rowley,* 458 US 176 (1982).

estudiante.[11] *Orraca López v. ELA*, supra, pág. 41. Puerto Rico se beneficia de dichos fondos desde los años setenta y, por tanto, está obligado a cumplir con ésta. *Declet Ríos v. Departamento de Educación*, supra, a las pág. 775-776.

La educación pública, gratuita y apropiada es definida por la Ley Federal de Educación Especial, *supra*, como la educación especial y los servicios relacionados pagados por el erario público y bajo supervisión y dirección pública que cumplen las exigencias de la agencia educativa estatal, los cuales incluyen educación preescolar, elemental o secundaria y se proveen conforme el programa educativo individualizado (PEI). 20 USC 1401 (9). El PEI es, en síntesis, el plan escrito de las necesidades educacionales del menor con impedimento y la educación y servicios relacionados a proveerse especialmente diseñados para cumplir con esas necesidades. 20 USC 1401 (14) y 1414 (d); *School Committee v. Dept. of Educ*, 471 US 359, 368 (1985). La educación pública, gratuita y apropiada está disponible para todos los niños con impedimento que residan en los estados entre las edades de tres (3) a veinte y un (21) años. 20 USC 1412 (1) (A). Asimismo, la Ley Núm. 51-1996, *supra*, define la *educación especial* como una "enseñanza pública gratuita especialmente para responder a las necesidades particulares de la persona con impedimentos, en el ambiente menos restrictivo". 18 LPRA sec. 1351 (7). La IDEA exige a toda agencia educativa que reciba asistencia al amparo de estas disposiciones, a establecer y mantener procedimientos para asegurar que los niños con impedimento y sus padres, tengan garantizados salvaguardas procesales ("procedural safeguards") con miras a lograr que se le provea una educación pública gratuita y apropiada. 20 USC 1415

---

[11] Ley Púb. Núm. 108-446, de 3 de diciembre de 2004 (118 Stat. 2647), 20 U.S.C. sec.1401(31) ("The term "State" means each of the 50 States, the District of Columbia, the Commonwealth of Puerto Rico, and each of the outlying.").

(a). Entre los procedimientos requeridos por la antes mencionada sección deben incluir entre otros: permitir que los padres puedan obtener una evaluación educativa independiente de su hijo con impedimento y la oportunidad a cualquier parte de presentar una querella. 20 USC 1415 (b)(1) y (b)(6); *School Committee v. Dept. of Educ,* supra, pág. 368.

Por otro lado, el Departamento de Educación promulgó el *Manual de Procedimientos de Educación Especial* del 2020. Entre otras cosas, en su sección 7.1, este establece que el PEI "[e]s el documento donde se establecen las necesidades académicas y funcionales del estudiante y cómo serán minimizadas a través de los servicios que el programa de educación especial ofrece con el propósito de garantizar que el estudiante reciba una educación pública, gratuita y apropiada conocida como FAPE, por sus siglas en inglés"[12]. Además, el PEI recoge los acuerdos de aquellos servicios educativos, relacionados y suplementarios que el Departamento de Educación se compromete a ofrecerle al estudiante o la estudiante[13]. A su vez, es el documento oficial "[q]ue contiene servicios cobijados por legislación federal y estatal".[14]

El referido manual, dispone que, tanto la legislación federal y estatal garantizan el derecho del estudiante con discapacidad a ser educado en igualdad de condiciones que un estudiante sin discapacidad. La Ley IDEA dispone que, el Departamento de Educación tendrá disponible diferentes ambientes educativos (alternativas de ubicación) apropiados donde implementar el PEI para lograr que el estudiante con discapacidad se eduque y logre progresar en el currículo general.[15] El proceso de ubicación consta de dos procesos:

---

[12] Sección 7.1 del *Manual de Procedimientos de Educación Especial*, pág. 65.
[13] *Íd.*
[14] *Íd.*
[15] Sección 8.1 del *Manual de Procedimientos de Educación Especial*, pág. 80.

a. **La determinación de la alternativa de ubicación** donde se implementará el PEI – Una alternativa de ubicación es el ambiente educativo o el tipo de salón donde el estudiante recibirá su educación y donde se implementará el PEI. Esta ubicación será en una escuela pública, apropiada para el estudiante y de forma gratuita para los padres. En la legislación federal se le conoce como "*Free, appropriate public education*" (FAPE, por sus siglas en inglés). La FAPE garantiza que el estudiante se le:

   i. Ofrezca una educación especial que le permita satisfacer las necesidades particulares que presenta.

   ii. Provea servicios relacionados que ayuden al estudiante a beneficiarse de la educación especial.

   iii. Proporcione esos servicios de manera gratuita.

   iv. Provea adaptaciones y acomodos razonables para ayudarlo a aprender y a participar en el programa de educación general.

   v. Cree un PEI donde se describa los servicios de educación especial que se ofrecerán.

   vi. Enseñe en el ambiente menos restrictivo.

b. **La identificación de una localización** donde se tiene disponible la alternativa de ubicación recomendada. La localización es la escuela pública, donde se tenga la alternativa de ubicación recomendada, que esté más cercana al lugar de residencia del estudiante.[16]

El Manual provee, además, la descripción de varias alternativas de ubicación conforme a la sección 300.115 de la Ley IDEA, estas son: salón regular, salón especial, escuela especial, hogar, hospital e institución[17]. Describe un salón regular como aquel en el cual estudiantes con y sin discapacidades reciben su educación. El currículo es regular, los estudiantes compiten para ser promovidos de grado por medio de la otorgación de notas parciales y finales. Existen dos modelos educativos bajo la anterior alternativa de educación:

   i. **Salón regular con servicios relacionados –** alternativa de ubicación donde el estudiante es educado junto a estudiantes sin discapacidad y

---

[16] Sección 8.2 del *Manual de Procedimientos de Educación Especial*, págs. 80-81.
[17] Sección 8.1(a) del *Manual de Procedimientos de Educación Especial*, pág. 81.

recibe servicios relacionados de parte del programa de educación especial.

ii. **Salón regular con servicios suplementarios** – alternativa de ubicación donde el estudiante es educado junto a estudiantes sin discapacidad y recibe servicios de un maestro recurso (integrado de forma parcial o total), maestro de educación física adaptada, maestro especialista en ciegos o sordos, asistencia tecnológica y/o servicios de un asistente. Esta alternativa incluye los modelos de matrícula reducida e inclusión.[18]

De otro lado, le corresponde al Departamento de Educación realizar un análisis sobre las alternativas de ubicación apropiada conforme al PEI. La localización de alternativas de ubicación "es el proceso que realiza el funcionario del COMPU que representa al DEPR y a la ORE para identificar las escuelas donde se tiene disponible la alternativa de educación recomendada en el PEI". Cuando el Departamento de Educación no tiene disponible la alternativa de educación recomendada en el PEI, *este podrá determinar identificar una escuela privada para comprar el servicio educativo a costo público*. La determinación de aprobar o rechazar una compra de servicios educativos le corresponde al Secretario Asociado de Educación Especial.[19] La alternativa de ubicación y localización recomendada deberá presentarse en la reunión con el COMPU. Tanto los padres como los miembros del COMPU pueden solicitar conocer las localizaciones presentadas con el propósito de disipar dudas o inquietudes antes de su aceptación.[20] De igual forma, los padres podrán presentar una propuesta de una escuela privada de su predilección. Deberá entregar dicha propuesta al FDEE IV que estuviera trabajando la consulta. La propuesta será evaluada por el Secretario de Educación Especial, pero no constituirá un compromiso de parte del Departamento de Educación, ni que se le otorgará una compra de servicio o que se

---

[18] Sección 8.1(2)(a) del *Manual de Procedimientos de Educación Especial,* pág. 82.
[19] Sección 8.3 del *Manual de Procedimientos de Educación Especial,* págs. 90-91.
[20] Sección 8.4 del *Manual de Procedimientos de Educación Especial,* pág. 94.

aceptará la escuela privada propuesta.[21]  Un funcionario de la SAEE asignado podrá realizar un último cotejo de escuelas públicas y las alternativas de ubicación disponibles a nivel Isla, y en la parte d del formulario SAEE-07C podrá:

    i.  [...]

    ii.  Ofrecer recomendaciones de localizaciones disponibles en el DEPR que pudieron ser pasadas por alto y que deben ser consideradas; o

    iii.  Pasar la consulta al Secretario Asociado de Educación Especial para evaluar si es o no necesario comprar el servicio educativo en una escuela privada e identificar escuelas privadas cercanas al lugar de residencia del estudiante que tiene la alternativa de ubicación recomendada.[22]

El Secretario Asociado de Educación Especial es el único funcionario del Departamento de Educación con la potestad de aceptar o denegar cualquier consulta para comprar el servicio educativo en una escuela privada. Los funcionarios escolares, facilitadores docentes de educación especial y los directores de CSEE pudiesen solicitar la consulta para la ubicación, pero no tendrán la facultad para determinar que se procederá con una compra de servicios.[23]  Por otro lado, la Ley Federal dispone que en las instancias en las que el Departamento de Educación no pueda ofrecerle los servicios educativos apropiados que el estudiante necesite en el sector público, este podrá comprar en el sector privado tales servicios educativos. 20 USC 1412 (A)(10)(B).

El precitado estatuto también dispone lo siguiente:

**(B) Children placed in, or referred to, private schools by public agencies**

    **(i)**  **In general**
Children with disabilities in private schools and facilities are provided special education and related services, in accordance with an individualized education program, **at no cost to their parents, if such children are placed in, or referred to, such schools or facilities**

---

[21] Sección 8.4 del *Manual de Procedimientos de Educación Especial*, pág. 96.
[22] Sección 8.4 (12) del *Manual de Procedimientos de Educación Especial*, pág. 97.
[23] Sección 8.4 (13) del *Manual de Procedimientos de Educación Especial*, pág. 98.

> **by the State or appropriate local educational agency** as the means of carrying out the requirements of this subchapter or any other applicable law requiring the provision of special education and related services to all children with disabilities within such State.
>
> **(ii) Standards**
> In all cases described in clause (i), the State educational agency shall determine whether such schools and facilities meet standards that apply to State educational agencies and local educational agencies and that children so served have all the rights the children would have if served by such agencies. 20 USC 1412 (10)(B)(i). (*Énfasis suplido*).

La agencia será responsable de sufragar los costos de educación de los niños con impedimentos en una institución privada a los cuales se les proveen educación especial y otros servicios relacionados de conformidad con el PEI, si la agencia consintió a que el niño con impedimento fuese referido a una institución privada o si el estudiante con necesidades especiales es ubicado por la propia agencia educativa en una institución privada. 20 USCA sec. 1412 (a)(10)(B)(i).

Por otro lado, también dispone que:

> **(C) Payment for education of children enrolled in private schools without consent of or referral by the public agency**
>
> **(i) In general**
> Subject to subparagraph (A), this subchapter does not require a local educational agency to pay for the cost of education, including special education and related services, of a child with a disability at a private school or facility if that agency made a free appropriate public education available to the child and the parents elected to place the child in such private school or facility.
>
> **(ii) Reimbursement for private school placement**
> If the parents of a child with a disability, who previously received special education and related services under the authority of a public agency, enroll the child in a private elementary school or secondary school without the consent of or referral by the public agency, a court or a hearing officer may require the agency to reimburse the parents for the cost of that enrollment if the court or hearing officer finds that the agency had not made

> a free appropriate public education available to the child in a timely manner prior to that enrollment.

Como norma general, la Ley Federal no requiere que se pague por los costos de educación y otros servicios relacionados en una institución privada, si la agencia encargada puso a la disposición del estudiante una educación pública y apropiada y los padres optaron por la alternativa privada. 20 USC 1412 (a)(10)(C)(i).

Ahora bien, la excepción a esta norma general es la siguiente: procede el reembolso de estos gastos cuando un Tribunal o Juez Administrativo determina que la agencia no cumplió con la obligación de proveer una educación pública, apropiada, gratuita de manera oportuna ("in a timely manner")[24] y la escuela privada en la cual este fue ubicado resulta beneficiosa para este. 20 USC 1412 (a)(10)(C)(ii); 34 CFR 300.148 (c). (*Énfasis suplido*). En cuanto a los beneficios educacionales en la escuela privada, la Corte Suprema de los Estados Unidos dispuso y citamos:

> Accordingly, "when a public school system had defaulted on its obligations under the Act, a private school placement is 'proper under the Act' if the education provided by the private school is 'reasonably calculated to enable the child to receive educational benefits.'" *Florence County Sch. Dist. Four v. Carter,* 510 U.S. 7, 11 (1993), citando a: *Board of Ed. of Hendrick Hudson v. Rowley,* 458 U.S. 176, 207, 73 L. Ed. 2d. 690, 102 S. Ct. 3034 (1982).

El reembolso requiere que el Estado pague aquellos gastos que debieron ser pagados y sostenidos en primera instancia si se hubiese preparado un PEI adecuado. *School Committee v. Dept. of Educ,* supra, págs. 370-371. El Máximo Foro Federal dispuso que, del historial legislativo surgió tal requerimiento:

> "If a parent contends that he or she has been forced, at that parent's own expense, to seek private schooling for the child because an appropriate program does not exist

---

[24] En Puerto Rico, el Artículo 4 de la Ley Núm. 51, *supra*, dispone que toda persona con impedimento tendrá derecho, entre otros: de "[s]er evaluadas y diagnosticadas con prontitud por un equipo multidisciplinario, que tome en consideración sus áreas de funcionamiento y necesidades, de modo que pueda recibir los servicios educativos y relacionados indispensables para su educación de acuerdo al programa educativo individualizado para el desarrollo óptimo de sus potencialidades". 18 LPRA sec. 1353(5).

within the local educational agency responsible for the child's education and the local educational agency disagrees, that disagreement and *the question of who remains financially responsible* is a matter to which the due process procedures established under [the predecessor to § 1415] appl[y]." S.Rep. No. 94–168, p. 32 (1975), U.S.Code Cong. & Admin.News 1975, pp. 1425, 1456; *Sch. Comm. Of Town of Burlington, Mass. V. Dep´t of Educ. Of Mass*, supra, pág. 371.

Con relación al reembolso de los gastos, la sección (iii) de la antes referida sección, denominada como "Limitation on reimbursement", enumera los siguientes casos en que el Tribunal o Juez Administrativo puede reducir o denegar el reembolso: (1) si en la más reciente reunión para discutir el PEI los padres no informaron a la agencia su inconformidad con el plan propuesto y su determinación de matricular al estudiante en una institución privada; (2) si diez días laborables antes de matricular al estudiante en una institución privada los padres no notificaron por escrito a la agencia la información descrita en el párrafo (aa), es decir, si no informaron por escrito su inconformidad con la ubicación propuesta y su decisión de matricular al niño en una escuela privada; (3) si con anterioridad a la remoción del estudiante de la escuela pública, la agencia notificó a los padres que el niño sería evaluado, pero los padres no permitieron que dicha evaluación se realizara y (4) si un tribunal determina que la actuación de los padres fue irrazonable. 20 U.S.C. sec. 1412(a)(10)(C)(iii).

En *Sch. Comm. Of Town of Burlington, Mass. V. Dep´t of Educ. Of Mass*, 471 U.S. 359 (1985), el Tribunal determinó que, la Ley IDEA autoriza el reembolso de gastos incurrido por los padres en educación privada, así como el pago directo a la institución, cuando el Estado no cuenta con una ubicación apropiada en una de sus escuelas. Esto, con el fin de salvaguardar el propósito principal del estatuto que se basa en el acceso a una educación pública, gratuita y apropiada.[25]

Bajo esta misma línea, en el caso *Mr. And Mrs. A, ex rel. D.A. v. New York City Department of Educ.* 769 F. Supp. 2d 403 (2011), una Corte de Distrito del estado de New York resolvió que, si la ubicación del menor cumple con los requisitos necesarios, procede el reembolso o el pago directo de forma retroactiva y prospectiva.  De

---

[25] *Sch. Comm. Of Town of Burlington, Mass. V. Dep´t of Educ. Of Mass*, supra.

igual manera, razonó que de ninguna forma la Ley IDEA ni la jurisprudencia rechazaban el pago directo de forma retroactiva. Mencionó que, "[t]he failure of the Act to make explicit mention of a particular remedy does not mean that the remedy is not, "in a proper case," "appropriate" relief".[26]  El raciocinio del Tribunal fue que, no hacerlo, conllevaría marginar a los estudiantes con impedimento que no contaran con los recursos económicos para costear los servicios de una institución privada cuando el Estado no cuenta con una. Colocándolos así, en una posición de desventaja y en contravención al propósito principal de la Ley IDEA. Explicó, además, que, ha sido reconocido o sugerido in *dicta* que, el remedio de pago directo se encuentra disponible para aquellos padres que han presentado una reclamación meritoria bajo los requisitos de *Burlington*, pero que, no cuentan con la capacidad económica para pagar los costos de una institución privada.[27]

Por otro lado, en *E.M. v. New York City Dept. of Educ.*, 758 F.3d 442 (2014), el Tribunal de Distrito destacó que, la Ley IDEA buscaba crear oportunidad educacionales para los niños con diversidad funcional, libre de costo para ellos y sus familias. Es por lo que, recalcó que esta requería en términos claros, que el Estado proveyera al menor una educación pública, apropiada y gratuita, asumiendo el costo, y *libre de costo para los padres*.  Además, la Corte de Distrito reconoció nuevamente que, el remedio de pago directo a la institución se encontraba disponible como una forma de asegurar los propósitos principales de dicha ley. *E.M. v. New York City Dept. of Educ.*, supra, pág. 451.  Este remedio de pago directo, puede ser apropiado en ciertas circunstancias. *Íd.* pág. 453.

---

[26] *Mr. And Mrs. A, ex rel. D.A. v. New York City Department of Educ*, supra, pág. 423.
[27] *Mr. And Mrs. A, ex rel. D.A. v. New York City Department of Educ*, supra, pág. 426.

Ahora bien, el Reglamento de Compras de Servicio en Escuelas Privadas, Reglamento Núm. 9196 de 9 de julio de 2020 (en adelante, Reglamento 9196), en su Art. 1, también dispone que, cuando el DEPR reconoce que no cuenta con la ubicación apropiada para el estudiante con impedimentos, deberá pagar los gastos educativos y de servicios relacionados en una institución privada, **sin costo para el padre, madre o encargado**.[28] (Énfasis nuestro). El Reglamento 9196, señala que, según la Ley IDEA término *sin costo para el padre*, significa que, toda la educación especialmente diseñada es provista sin cargos, aunque puede que el padre asuma cuotas incidentales (*incidental fees*), que le sean cobrados a los estudiantes sin discapacidades o a sus padres como parte del programa regular.

En cuanto a las modalidades de la compra de servicios, el Art. 6.1 del aludido Reglamento establece que, en las instancias en las que un estudiante con discapacidad no pudiese ser adecuadamente ubicado y servido en el sistema de educación pública, este podrá, con autorización del SAEE, ser ubicado en una institución privada contratada por la Agencia. Los estudiantes ubicados por la Agencia en instituciones o escuelas privadas contarán con los mismos derechos que aquellos que reciben servicios en el Sistema Público.[29] Mientras que, el Art. 6.2 del precitado Reglamento establece que, tanto la Ley IDEA como la jurisprudencia reconocen el derecho que ostentan los padres a recibir un reembolso de los gastos educativos y relacionados incurridos por estos para el beneficio de sus hijos si: 1) la agencia no ofrece una educación pública, gratuita y apropiada de manera oportuna antes de la ubicación en la escuela privada; 2) si la ubicación privada del estudiante es apropiada y 3) si se cumplen los requisitos de equidad.

---

[28] Véase también, Art. 5.1 del Reglamento 9196, *supra*.
[29] Art. 6.1 del Reglamento 9196, *supra*.

El Art. 6.3 del Reglamento 9196, *supra,* en cuanto al pago directo por parte de la agencia a instituciones privadas que no tienen contrato con la Agencia, sugiere lo siguiente:

> En los casos en que, de ordinario, procedería un reembolso de los gastos incurridos por los padres para sufragar servicios educativos y relacionados, los padres podrán solicitar a la Agencia el pago directo a las instituciones privadas que proveen dichos servicios, aun ante la inexistencia de vínculo contractual entre la Agencia y la institución en cuestión. Procederá dicha solicitud al quedar demostrado que el padre no posee la capacidad económica de adelantar el pago en cuestión y que, por ende, el rembolso no sería una alternativa real ni viable.

Asimismo, establece que, aquellos estudiantes que fuesen ubicados por la Agencia en instituciones o escuelas privadas tienen los mismos derechos que los estudiantes que reciben servicios en el Sistema Público.

Esbozada la normativa jurídica que enmarca la controversia de epígrafe, procedemos a aplicarla.

**III**

En su primer señalamiento de error, la parte recurrente sostiene que, erró la agencia recurrida al determinar que el DEPR no autorizó los servicios que el Colegio Clagill le brindó al menor DRVC para los años escolares 2022-2023 y 2023-2024, porque la ubicación adecuada acordada por el COMPU incluida en el PEI – salón regular con servicios suplementarios y relacionados– equivale a la ubicación de salón regular con servicios relacionados.

Adelantamos que, le asiste la razón. Veamos.

En la reunión del COMPU, se determinó que, los servicios ofrecidos en la propuesta de Clagill satisfacían las necesidades del menor DRVC, como ubicación adecuada en un salón regular con *servicios suplementarios y relacionados*. En la *Minuta* de la reunión del COMPU efectuada el 23 de mayo de 2022, se discutió que, el borrador del PEI incluye áreas de *servicios relacionados* de: terapia de habla y lenguaje, terapia ocupacional sensorial, terapia física y

terapia psicológica. Se acordó incluir *acomodos razonables* que son: de presentación, de responder, de ambiente y lugar, y de tiempo e itinerario. Los acomodos razonables son parte de los *servicios suplementarios*, conforme la Sec. 12.2 del Manual de Procedimientos de Educación Especial. Conforme surge del expediente, en la reunión de 23 de mayo de 2022, el COMPU emitió el PEI para el año escolar 2022-2023.

De la *Minuta* del COMPU, en la sección de alternativa de ubicación/modalidad de servicios se dispuso que:

a) Luego de analizar y discutir documentos relacionados a [DRVC] como lo son Informe Educativo, Observaciones y Evaluaciones, la Educación Pública Gratuita y Apropiada (FAPE) para el estudiante recomendad\o [sic] en COMPU es **Salón regular con servicios suplementarios; y servicios relacionados de:** Terapia de Habla y Lenguaje, Terapias Ocupacional, Terapia Física y Terapia Psicológica.

Es decir, en la reunión del COMPU se reconoció que, el menor DRVC necesitaba los servicios suplementarios y servicios relacionados.

En primer lugar, nos corresponde establecer las diferencias entre *servicios relacionados* y *servicios suplementarios*. La Ley IDEA define los servicios relacionados como sigue:

Related services

(A) In General

The term "related services" means transportation, and such developmental, corrective, and other supportive services (including speech-language pathology and audiology services, interpreting services, psychological services, physical and occupational therapy, recreation, including therapeutic recreation, social work services, school nurse services designed to enable a child with a disability to receive a free appropriate public education as described in the individualized education program of the child, counseling services, including rehabilitation counseling, orientation and mobility services, and medical services, except that such medical services shall be for diagnostic and evaluation purposes only) as may be required to assist a child with disability to benefit from special education, and includes the early

identification and assessment of disabling conditions in children. 20 USC 1401 (26).

Mientras que, el Manual de Procedimientos de Educación Especial de 2020, en la Sección 10.1, describe los *servicios relacionados* como "[s]ervicios de desarrollo, correctivos y de apoyo que se requieren para ayudar a un estudiante con discapacidad a beneficiarse de la educación especial".[30] Dichos servicios incluyen:

a) Transportación: regular o adaptada y/o beca de transportación.

b) Evaluaciones y terapias en: habla y lenguaje; psicología; terapia ocupacional; terapia física, y audiología.

c) Asesoría: consejería escolar; consejería en rehabilitación; orientación y movilidad; trabajo social.

d) Otros: interpretación (lenguaje de señas); salud escolar; enfermera escolar, y recreación incluyendo la terapéutica.[31]

Por otro lado, la Ley IDEA define los servicios suplementarios como:

> Supplementary aids and services
> The term "supplementary aids and services" means aids, services, and other supports that are provided in regular education classes or other education-related settings to enable children with disabilities to be educated with nondisabled children to the maximum extend appropriate in accordance with section 1412(a)(5) of this title. 20 USC 1401 (33).

Asimismo, el Manual de Procedimientos de Educación Especial de 2020 en su sección 12.1, describe los *servicios suplementarios* como "[a]quellas ayudas, servicios y otros apoyos que se brindan dentro de la sala de clases de educación regular y especial, otros entornos relacionados con la educación, entornos extracurriculares y no académicos, para permitir que los estudiantes con discapacidades sean educados con estudiantes no discapacitados en la mayor medida posible". Además, explica que

---

[30] Manual de Procedimientos de Educación Especial, Sec.10.1, pág. 116.
[31] *Íd.*

hay dos tipos de servicios suplementarios: a) de apoyo al estudiante: maestro recurso, maestro itinerante especialista, maestro de educación física adaptada, y b) de ayuda al estudiante: acomodos razonables, asistencia tecnológica, asistentes de servicios.[32]

En la *Resolución Final* objeto de este recurso, la agencia recurrida dispuso que, surgía del PEI que al menor DRVC se le recomendó la ubicación en un salón regular con servicios suplementarios. Señaló que, tales servicios suplementarios eran servicios de terapia del habla, ocupacional, física, psicológica y educativa. No obstante, cabe destacar que, conforme a la Ley IDEA, los servicios antes mencionados, constituyen *servicios relacionados*.

De acuerdo al PEI, se recomendó un salón regular con servicios suplementarios. Sin embargo, se recomendó terapia del habla y terapia ocupacional, ambas, que de acuerdo a la Ley IDEA, como mencionáramos, constituyen *servicios relacionados*[33]. De igual manera, el 1 de septiembre de 2022, mediante misiva remitida a los padres del menor DRVC, la SAEE aprobó la solicitud para la compra de servicios educativos y relacionados, si aplicaba, según la propuesta y lo reseñado en el PEI. Asimismo, debido a que no fue realizado otro PEI para el año escolar 2023-2024, se le informó a la señora Colón Navedo que se establecía que el PEI firmado (en el año escolar 2022-2023), continuaba estando vigente hasta tanto se realizara uno nuevo.[34] Es por lo que, el DEPR sí autorizó los servicios provistos por el Colegio Clagill para los años escolares 2022-2023 y 2023-2024.

Como segundo señalamiento de error, la parte recurrente aduce que, la agencia recurrida determinó que, el programa educativo individualizado para el año escolar 2022-2023 discutido

---

[32] Manual de Procedimientos de Educación Especial, Sec. 12.1, pág. 142.
[33] Surge de la TPO del 22 de febrero de 2024, que, el menor DRVC recibe terapia del habla, terapia ocupacional, terapia física y terapia psicológica por remedio provisional. Véase pág. 58, líneas 16-22.
[34] TPO del 22 de febrero de 2024, pág. 54, líneas 1-18.

en la reunión del 23 de mayo de 2022 fue firmado en controversia por localización y ubicación.

Surge de la *Minuta* de la reunión del COMPU celebrada el 23 de mayo de 2022, que, se aceptaba y aprobaba el documento PEI 2022-2023 en controversia por localización y ubicación. Además, dispuso que, respecto a dicha controversia sobre localización y ubicación, se realizaría una consulta de asistencia técnica a la SAEE. De igual manera, fue acordado que, la aludida controversia sería dejada sin efecto, sin la necesidad de convocar un COMPU nuevo, cuando la SAEE analizara la *Propuesta* del Colegio Clagill y determinara si iba a autorizar la compra de servicios en el Colegio Clagill[35]. Posteriormente, la SAEE remitió una misiva dirigida a los padres del menor DRVC, donde autorizó la compra de servicios para el año escolar 2022-2023[36].

Una vez fue aprobada la compra de servicios por la SAEE, se dejó sin efecto la controversia de localización y ubicación. Por lo que, era innecesario enmendar el PEI a tales efectos.

En su cuarto señalamiento de error, la parte recurrente aduce que, el foro recurrido incidió al interpretar de forma errónea la certificación de pagos del Colegio Clagill del 30 de agosto de 2022, al determinar que esta no reflejaba ni establecía un "balance final o un cobro de una cantidad distinta con balance de pago pendiente" para los años escolares 2022-2023 y 2023-2024.

De acuerdo al expediente, mediante correo electrónico, le fue solicitado a la señora Colón Navedo que informara la cantidad que pagó al Colegio Clagill por los servicios ofrecidos el año 2021-2022[37], de matrícula para el año 2022-2023 y la mensualidad de agosto de

---

[35] Véase TPO de 22 de febrero de 2024, pág. 14, líneas 5-12.
[36] Véase TPO de 22 de febrero de 2024, pág. 39, líneas 23-25; pág. 40, líneas 1-9.
[37] Año que los padres costearon debido a que el menor DRVC aún no estaba inscrito en el programa de educación especial, y se encontraba en ubicación unilateral para dicho año. Véase TPO de 22 de febrero de 2024, pág. 28, líneas 20-25, pág. 29, líneas 1-4.

2023.[38] Asimismo, con el propósito de solicitar el pago directo de los servicios, en enero de 2023, la señora Colón Navedo le solicitó al Colegio Clagill otra certificación de lo que ella había pagado en el año escolar 2022-2023. Las solicitudes hechas a la señora Colón Navedo se limitaron a lo que esta había pagado a la institución privada, no a si existía un balance pendiente u otra información relacionada. Es decir, la madre del menor DRVC respondió al requerimiento específico de la agencia recurrida. Esta le solicitó al Colegio Clagill certificaciones específicamente de los pagos que ella había realizado[39]. Aun así, cabe destacar que, del propio testimonio del señor Eric Álvarez surge que, la certificación de pago para el año escolar 2023-2024, refleja una deuda de $250.00 por concepto de matrícula[40], y una deuda de $5,145.00 del primer semestre y de $3,430.00 del segundo semestre hasta la fecha de la certificación por concepto de mensualidades[41].

La parte recurrente, en su quinto señalamiento de error, sostiene que, el DEPR incidió en su interpretación de la carta de aprobación de la compra de servicios para el año escolar 2023-2024 al concluir que puede determinar el precio o costos distintos a los establecidos por la escuela privada en su propuesta de servicios educativos.

La propuesta educativa sometida por el Colegio Clagill al DEPR reflejaba una cuantía de $2,640.00 por mensualidades para el año 2022-2023. Conforme a las necesidades del menor DRVC según el PEI, el DEPR aprobó dicha propuesta y los servicios ofrecidos en la misma, excluyendo las terapias acuáticas y el servicio de transporte, para un costo mensual total de $2,140.00. Posteriormente, debido a que no fue celebrada una reunión del

---

[38] Véase TPO de 22 de febrero de 2024, pág. 29, líneas 6-14.
[39] TPO de 18 de marzo de 2024, pág. 41, líneas 3-5.
[40] Véase TPO de 18 de marzo de 2024, pág. 36, líneas 12-22.
[41] Véase TPO de 18 de marzo de 2024, pág. 36, líneas 24-25; pág. 37, líneas 1-3.

COMPU para revisar el PEI, se le notificó a la parte recurrente que, se aprobaba la compra de servicios para el año escolar 2023-2024 conforme al PEI 2022-2023.

Según solicitado por la señora Colón Navedo, el Colegio Clagill emitió las certificaciones donde, como ya reseñáramos, fue reflejado el *pago parcial* emitido por la señora Colón Navedo, que había sido permitido por la institución entre tanto esta esperaba que fuera resuelta su solicitud de pago directo. El aludido *pago parcial* era de $425.00 respecto a las mensualidades. De igual manera, el Colegio Clagill emitió una certificación que establecía que el balance pendiente era de $1,715.00 por mensualidades, puesto que, la mensualidad era $2,140.00, menos el pago parcial realizado por la madre del menor DRVC[42]. El balance total de las mensualidades surge claramente de la propuesta *aprobada por el propio DEPR*. Razonamos que, incidió la agencia recurrida en determinar que el costo de las mensualidades era de $425.00, cuando indudablemente en ningún momento fue acordada dicha cantidad y surge tanto del expediente como de la vista celebrada que, dicha cantidad fue emitida por concepto de *pago parcial* con el propósito de que el menor DRVC no se quedara desprovisto de una educación apropiada. Lo anterior, ya que su familia no contaba con los recursos necesarios para costear la totalidad de la mensualidad.

En el sexto señalamiento de error, la parte recurrente sugiere que, la agencia recurrida incidió al determinar que, la señora Colón Navedo no reclamó al DEPR el pago de la cantidad adeudada por los servicios brindados por el Colegio Clagill durante los años escolares 2022-2023 y 2023-2024, y que, el único reclamo realizado por esta fue el rembolso de lo pagado por ella. Adelantamos que, le asiste la razón. Veamos.

---

[42] Véase TPO de 18 de marzo de 2024, pág. 72, líneas 10-19; pág. 73, líneas 2-21; pág. 117, líneas 3-15.

Si bien es cierto que, la señora Colón Navedo solicitó el reembolso de la cantidad pagada al Colegio Clagill para los años escolares 2022-2023, y 2023-2024, esta no fue su única solicitud. De la *Querella* presentada por la parte recurrente surge, de forma clara que, le solicitó al DEPR el pago directo al Colegio Clagill correspondiente a la cantidad adeudada por los servicios prestados para el año escolar 2022-2023, y por la matrícula y mensualidades de agosto, septiembre y octubre del año escolar 2023-2024. Es decir, contrario a lo determinado por la agencia, la parte recurrente sí le solicitó al DEPR el pago directo al Colegio Clagill de lo adeudado.[43] Se desprende del expediente que, el Colegio Clagill permitió que el menor DRVC continuara recibiendo los servicios, aunque los padres no pudieran costearlos en su totalidad, con el propósito de que estos posteriormente fuesen costeados por el DEPR ante la solicitud de pago directo de la señora Colón Navedo.[44]

Por tanto, es completamente errónea la determinación de la agencia recurrida en cuanto a que ni el colegio ni la madre del menor DRVC realizaron reclamación alguna al DEPR en cobro de dinero adeudado para los años escolares 2022-2023 y 2023-2024.

En su tercer señalamiento de error, la parte recurrente arguye que, se equivocó la agencia recurrida al determinar que no cuestionó la tabla con cuantías para mensualidades y matrícula diferentes a la establecida en la propuesta de servicios de Clagill, que está aprobada en la autorización de la compra de servicios para el año escolar 2023-2024, del 2 de agosto de 2023.

Como séptimo señalamiento de error, la parte recurrente sostiene que, la agencia recurrida incidió al determinar y concluir que, ante la inexistencia de una relación contractual entre el colegio

---

[43] Véase también TPO de 22 de febrero de 2024, pág. 86, líneas 1-7.
[44] Véase TPO de 22 de febrero de 2024, pág. 48, líneas 15-25; pág. 49, líneas 8-23.

y el DEPR no podía ordenarle a este último el pago directo al colegio por concepto de servicios que no fueron consentidos por la agencia.

En el octavo señalamiento de error, la parte recurrente sostiene que, el DEPR se equivocó al concluir que la señora Colón Navedo no le adeuda nada al colegio y, por consiguiente, el DEPR tampoco, toda vez que, el pago establecido es el que surge de la carta de autorización y no el establecido en la propuesta.

Por encontrarse intrínsecamente relacionados, discutiremos los tres señalamientos de error de forma conjunta. De entrada, adelantamos que, le asiste la razón. Veamos.

Según es sabido, uno de los propósitos principales de la Ley IDEA es que los menores con discapacidad, reciban una educación pública, apropiada, gratuita y que atienda las necesidades de cada estudiante.[45] La precitada ley permite que, en las instancias en las que el Estado no cuente con una educación apropiada para el menor con discapacidades, este sea ubicado en una institución privada a costo público.[46] La Ley IDEA dispone que, la agencia será responsable de sufragar los costos de educación de los niños con discapacidades en una institución privada, a los cuales se les proveen educación especial y otros servicios relacionados, de conformidad con el PEI, si la agencia consintió a que el niño con discapacidad fuese referido a una institución privada o si el estudiante con necesidades especiales es ubicado por la propia agencia educativa en una institución privada.[47] Tanto el estatuto como la jurisprudencia interpretativa han dispuesto que, dicha educación deberá ser libre de costo para los padres. Bajo esa misma línea, ha sido reconocido que, con el fin de salvaguardar el propósito principal del estatuto, que se basa en acceso a una educación

---

[45] 20 USCA sec. 1400(d)(1), (2) y (4)
[46] Sección 8.3 del *Manual de Procedimientos de Educación Especial,* págs. 90-91.
[47] 20 USCA sec. 1412 (a)(10)(B)(i).

pública, gratuita y apropiada, cuando la ubicación del menor cumple con los requisitos necesarios, procede el reembolso del costo o el pago directo de forma retroactiva y prospectiva.[48]

En el caso de epígrafe, debido a que el DEPR no contaba con una ubicación adecuada, evaluó la propuesta educativa del Colegio Clagill y autorizó que el menor DRVC fuera ubicado en esta por cumplir con los requisitos necesarios y entender que, era una institución apropiada. A estos efectos, aprobó la compra de servicios mediante reembolso, por medio de una misiva remitida al padre del menor DRVC por correo electrónico.[49] No obstante, la señora Colón Navedo remitió una misiva el 23 de febrero de 2023 al DEPR, donde solicitó que, fuera modificado a pago directo a la institución debido a que, los padres del menor DRVC no contaban con los recursos necesarios para costear los gastos escolares.[50] En la vista celebrada el 22 de febrero de 2024, la señora Colón Navedo testificó que, le presentó al DEPR documentos donde se certificaba que su familia era una de escasos recursos, incluyendo, una carta del PAN.[51] De igual manera, testificó que, debido a que no contaba con los recursos para pagar la totalidad de los costos de la institución privada, el Colegio le permitió realizar pagos parciales hasta tanto se resolviera su solicitud de pago directo, a fin de que el menor DRVC no se quedara sin los servicios necesarios.[52]

Si bien es cierto que, no existía una relación contractual entre el Colegio Clagill y el DEPR, esto no es impedimento para que se ordene el pago directo a dicha institución, ni para que la madre del menor DRVC solicitara el cambio al método de pago directo. Esto,

---

[48] Véase *E.M. v. New York City Dept. of Educ.*, supra.
[49] Véase TPO de 22 de febrero de 2024, pág. 36, líneas 2-5; pág. 39, líneas 23-25, y pág. 40, líneas 1-9.
[50] Véase TPO de 22 de febrero de 2024, pág. 47, líneas 3-17; pág. 48, líneas 8-13; 15-25.
[51] Véase TPO de 22 de febrero de 2024, pág. 59, líneas 1-17.
[52] Véase TPO de 22 de febrero de 2024, pág. 48, líneas 15-25; pág. 49, líneas 8-23.

con el propósito de salvaguardar las garantías ofrecidas por la Ley IDEA de una educación pública, apropiada y gratuita, libre de costo. De igual manera, el propio Reglamento 9396 del Departamento de Educación permite que los padres soliciten a las agencias el pago directo a las instituciones privadas, aún ante la inexistencia de una relación contractual entre la agencia y la institución educativa en cuestión. Esto, en los casos en los que de ordinario, procedería un reembolso, cuando los padres puedan demostrar que no poseen la capacidad económica de adelantar el pago en cuestión, y que, por ende, el reembolso no sería una alternativa real ni viable.[53] A nuestro juicio, la madre cumplió con tal requisito, en la medida en que probó que no contaba con los recursos económicos para efectuar el pago por adelantado.

Somos del criterio de que, no permitir el pago directo en estas circunstancias particulares, conllevaría un atentado contra los derechos del menor DRVC al acceso a una educación pública, apropiada y gratuita. Asimismo, contravendría el propósito principal de la Ley IDEA, puesto que, su intención no es que los menores reciban una educación gratuita sujeto a la habilidad de sus padres de pagar por adelantado, es decir, sujeto a su capacidad económica. Es por lo que, no podemos avalar una posición en la cual a un menor se le prive de su derecho a una educación apropiada, por el mero hecho de que su familia se encuentre económicamente incapaz de pagar los costos que conlleva una institución privada. De así hacerlo, estaríamos avalando que al menor se le coloque en una posición de desventaja y vulnerabilidad. De igual manera, nos parecen desacertadas las expresiones de la agencia recurrida en la *Resolución Final* cuando mencionó que, "[d]e no estar de acuerdo, el Colegio con el pago recibido por la madre del Querellante, éste

---

[53] Art. 6.3 del Reglamento 9196, *supra*

deberá tomar la decisión que estime pertinente si así lo desea". Recordemos que, el norte de estas decisiones debe ser salvaguardar los derechos de los menores con discapacidades, conforme a los principios estatutarios de la Ley IDEA. La carta de autorización aceptó la propuesta presentada por el Colegio, para los años escolares 2022-2023 y 2023-2024, el menor DRVC recibió dichos servicios propuestos y autorizados.[54] Por tanto, el DEPR se encuentra obligado a pagar lo aprobado en la misiva mediante pago directo, conforme a la Ley IDEA y así estamos facultados para ordenarlo en armonía con la discreción que nos concede dicha ley.[55]

**IV**

Por los fundamentos que anteceden, se revoca la *Resolución Final* recurrida y se le ordena al DEPR el pago directo de lo adeudado por concepto de servicios educativos, servicios relacionados y suplementarios al Colegio Clagill por los años escolares 2022-2023 y 2023-2024. Ello acorde al PEI 2022-2023. Asimismo, ordenamos el reembolso de aquellas cantidades previamente pagadas por la señora Colón Navedo relacionadas a los servicios prestados, en beneficio del menor DRVC, en este caso y que aún no hayan sido desembolsadas.

Notifíquese.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[54] Véase TPO de 18 de marzo de 2024, pág. 23, líneas 13-21.
[55] 20 USCA Sec. 1415 (I)(2)(C)(iii).